IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| H. BEATTY CHADWICK | : | CIVIL ACTION |
| v. | : | |
| GEORGE HILL, Warden, Delaware County Prison, RONALD NARDOLILLO, Warden, Delaware County Prison, THE DISTRICT ATTORNEY OF THE COUNTY OF DELAWARE, THE ATTORNEY OF THE STATE OF PENNSYLVANIA, and BARBARA APPLEGATE | : | FILED<br>APR 25 2008<br>MICHAEL E. KUNZ, Clerk<br>By_____ Dep. Clerk<br>NO. 06-1709 |

## MEMORANDUM AND ORDER

NORMA L. SHAPIRO, S.J.                                                                                     APRIL 25, 2008

Before the court are Petitioner's Objections to the Report and Recommendations ("R&R") of United States Magistrate Judge Arnold C. Rapoport ("Judge Rapoport") that a Motion to Intervene and File an Answer by Barbara Crowther Chadwick Applegate ("Mrs. Applegate") be granted and the petition for writ of habeas corpus be denied without an evidentiary hearing.

The history of this litigation is long and convoluted. It is recited at length in this court's opinion of January 3, 2002, on petitioner's fifth federal petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, H. Beatty Chadwick ("Chadwick"), argued that his imprisonment was impermissibly punitive and he had been denied due process because: (1) he was and is unable to comply with a state court order of which he has been adjudged contemptuous; (2) he was denied a jury trial and other procedural rights; (3) he was imprisoned after a summary proceeding; (4) his imprisonment has become punitive; (5) he was imprisoned for failure to pay money; (6) his civil imprisonment is indefinite; (7) the imprisonment order is facially unlawful; (8) the state court ordering the incarceration lacked jurisdiction; and (9) he was denied a prompt appeal.

After a *de novo* consideration of Chadwick's petition, this court granted the writ of habeas corpus because his continued imprisonment (then eighty months) represented an unreasonable application of Supreme Court precedent, had lost its coercive effect and was by then impermissibly punitive even though the duration of Chadwick's incarceration has always been up to him since compliance with the state court order would guarantee his release. Chadwick has consistently argued: (1) he did not have the present ability to comply so his incarceration was indefinite; and (2) even if he did have the ability to comply, the six years and four months he had spent in prison for his failure to comply strongly suggested that further incarceration would have no coercive effect. Chadwick contended the line between coercive and punitive imprisonment had been crossed.

However, the state courts have repeatedly found that Chadwick has the present ability to comply with the order to remit marital assets to a court escrow account for equitable distribution.[1] Under AEDPA, this court is bound by those determinations absent rebuttal of the presumptive correctness of the state court findings by clear and convincing evidence. See 28 U.S.C.A. §

---

[1] Judge Joseph Battle found on at least three occasions that Chadwick had the present ability to comply. *See Chadwick v. Chadwick*, No. 92-19535, slip op. at 4, 5 (Ct. Com. Pl., Del. Cty., Pa. Sept. 22, 1999)(Chadwick feigning mental illness in effort to be released without remitting the marital funds; his refusal to sign authorizations to allow third parties to trace the funds establishes he still has control over them); *Chadwick v. Hill*, No. 96-6154, slip op. at 3 (Ct. Com. Pl., Del. Cty., Pa. June 21, 1996)("As stated in two previous opinions . . . , this court has found [Chadwick's] testimony, that he did not have control of the disputed funds or knowledge of the whereabouts of the disputed funds, to be incredible;" he could comply and may still comply); *Chadwick v. Hill*, No. 95-80202, slip op. at 8 (Ct. Com. Pl., Del. Cty., Pa., Sept. 20, 1995)("It is abundantly clear that [Chadwick] still has control over the disputed marital funds and certainly has the ability to comply with [the] July 22, 1994 order.").

The Superior Court has also found that Chadwick has the ability to comply. See *Chadwick v. Hill*, No. 96-19535, slip op. at 6 (Pa. Super. Ct. Apr. 23, 1997)("After careful review, we would agree that the record supports the trial court's conclusion that [Chadwick] not only has the present ability to comply but also that there is a realistic possibility that he will comply with the order."); *Chadwick v. Chadwick*, Nos. 95-1555, 95-3612, 95-3773, 96-963, slip op. at 12 (Pa. Super. Ct. Aug. 22, 1996)("Because [Chadwick] clearly holds the keys to the jailhouse door, we find that the sanctions imposed on him have not lost their coercive effect.").

2254(e)(1)(West 1994 & Supp. 2001).[2] The record clearly demonstrated that the state court findings were not erroneous.[3] This court was convinced that Chadwick had the present ability to comply with the July 22, 1994, order but, after what was then nearly seven years' incarceration for failure to comply, believed confinement was no longer serving a coercive purpose and Chadwick's continued incarceration could not be rationalized in light of Chadwick's clear and convincing proof there was no "substantial likelihood" that his remaining in custody would result in his compliance. This court found that his confinement was no longer coercive, and state court findings to the contrary were an unreasonable application of Supreme Court precedent.

---

[2] This subsection of the AEDPA states: "In a proceeding instituted by a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.A. §2254(e)(1).

[3] As recently as April 11, 2001, Judge Kenneth A. Clouse suggested a compromise: former President Judge Francis J. Catania would be appointed as Chadwick's guardian to trace the assets at issue. Chadwick would cooperate with former Judge Catania by providing him with all information and materials necessary to effectuate the search. Once former Judge Catania certified that Chadwick had cooperated and he had all the information necessary to conclude the investigation, Chadwick would be released. Chadwick refused this compromise; he would not agree unless his release were contingent only upon his delivering the requested documents to former Judge Catania. *See Chadwick v. Chadwick*, No. 92-19535, April 11, 2001 Hearing, Tr. at 4, 8.

Twice in August, 1995, Chadwick declined to provide authorization to allow third parties to investigate his assets or to allow the IRS to release his 1993 tax return. *See Chadwick v. Hill*, No. 95-80160, August 17, 1995 Hearing, Tr. at 74; *Chadwick v. Hill*, No. 95-80160, August 8, 1995 Hearing, Tr. at 22-23.

Chadwick's refusals to allow investigation of the funds without his release from custody suggests that he is concerned the assets will be found; if he is released upon signing authorizations, he could locate and secrete the assets, prevent them from being found in time to remit to the court. He prefers to remain incarcerated rather than allow his former wife to receive an equitable allotment of the marital assets. This suggests that Chadwick will continue to do all in his power to keep that money hidden and beyond the jurisdiction of the Delaware County Court.

However, the Court of Appeals reversed; it held the state order was not contrary to or an unreasonable application of federal law as determined by the Supreme Court, that the contemnor, who was fully capable of complying but would not do so, might be held indefinitely until he did comply. *See Chadwick v. Janecka, et al.*, 312 F.3d 597 (3d Cir. 2002).

Because the state courts have repeatedly found that Chadwick has the present ability to comply with the July, 1994 state court order, the Court of Appeals refused to find a federal constitutional bar to Chadwick's indefinite confinement for civil contempt so long as he retained the ability to comply with the order requiring him to transfer the money at issue. This decision did not preclude Chadwick from filing a new federal habeas petition to claim he was unable for some new reason to comply with the state court's order.

When Chadwick attempted to file the instant petition, following the report of Special Master A. Leo Sereni, Esq. (the "Sereni Report"), former Chief Judge of the Delaware County Court of Common Pleas, this court was of the view that the petition, reasserting that he lacked the ability to comply, was a successive habeas petition requiring permission of the Court of Appeals to proceed. However, on April 13, 2006, the Court of Appeals issued an Order stating:

> The foregoing application for leave to file a second or successive habeas petition is denied as unnecessary. Petitioner's proposed habeas petition attacks the denial of a motion for release from a civil contempt sanction that occurred in 1995. It appears, therefore, that petitioner's arguments based on new factual evidence and the state court's interpretation of that evidence were not available to him when he filed his prior habeas petitions in federal court. Thus, the proposed petition would not be "second or successive" under 28 U.S.C. § 2244 (b)(2) and Petitioner does not need our authorization to proceed. *Benchoff v. Colleran*, 404 F.3d 812, 817 (3d Cir. 2005). The Clerk is directed to transfer the application, to the United States District Court for the Eastern District of Pennsylvania for further proceedings. The District Court may wish to issue warnings pursuant to *Mason v. Meyers*, 208 F.3d 414, 418 (3d Cir. 2000), or it may wish to stay and abey the proceeding pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), if it concludes that the claim is unexhausted, before it

4

proceeds with the petition in accordance with 28 U.S.C. § 2254.[4]

At the time of the original filing, Chadwick's claims had not been exhausted in state court, but they had been by April 13, 2006, when the Court of Appeals directed transfer to the District Court. In the interim, the Common Pleas Court had stricken the Sereni Report in its entirety as unauthorized and unfounded. The Superior Court had quashed Chadwick's appeal on July 7, 2006. There was no petition for allocatur to the Pennsylvania Supreme Court.

The District Court, on transfer, referred the Petition to Magistrate Judge Rapoport for a Report and Recommendation. The Magistrate Judge recommended that the Petition to Intervene of Barbara Jean Crowther Chadwick Applegate ("Mrs. Applegate"), Chadwick's ex-wife, be granted, that her Answer and New Matter not be stricken, and that the writ of habeas corpus be denied with prejudice and without an evidentiary hearing.

Chadwick has filed three objections to the Report and Recommendation:

1) The Magistrate Judge improperly rejected the finding of a state court Master that Petitioner was unable to comply with the injunction causing his civil confinement;

2) The Magistrate Judge overlooked Petitioner's additional claim that it is not possible to comply with an extinguished preliminary injunction; and

3) The Magistrate Judge erred in granting the petition of Barbara Applegate to intervene in this proceeding.

Chadwick has failed to mention in either his submission to the Magistrate Judge or to this court that despite Master Sereni's Findings of Fact and Conclusions of Law, the state court struck

---

[4]Chadwick received the warnings contemplated by *Mason v. Meyers*, 208 F.3d 414, 418 (3d Cir. 2000), on the district court form he used to file the current habeas petition.

Because his claims have been exhausted in state court, it is not necessary to stay and abey this proceeding pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005).

the Sereni Report in its entirety and denied his state court habeas petition.

As stated in the Notice Chadwick received with a copy of the Magistrate Judge's report and recommendation, the court makes a *de novo* determination of those portions of the report and recommendation to which objection is made. 28 U.S.C. § 636(b)(1)(C).

> 1. The Magistrate Judge did not err in granting the petition of Barbara Applegate to intervene in this proceeding.

Viewing the record as a whole, under Fed. R. Civ. P. 24, Mrs. Applegate was entitled to intervene as of right because: the application was timely; she claimed a substantial interest in the property or transactions which are the subject of the action; and disposition of the action might practically impede her ability to protect her interest not adequately represented by existing parties. Even if intervention was permissive, it would not be an abuse of discretion; the intervention has not delayed or prejudiced the rights of the original parties in any way.

The status of Mrs. Applegate, then Mrs. Chadwick, was considered at length by the Court of Appeals in *Chadwick v. Janecka*, 312 F.3d at 601-04. Her right as an intervenor was not questioned but Chadwick challenged her standing to appeal in the absence of an appeal by the original defendants. To establish Article III standing, the intervenor must establish "injury in fact" (a harm that is both concrete and actual or imminent not conjectural or hypothetical), causation, and the likelihood the relief would remedy the injury in fact. *Id.* at 602.

The Court of Appeals had little difficulty concluding that Mrs. Applegate met all of those requirements. It found Mrs. Applegate clearly had suffered and continues to suffer an injury in fact that is both concrete and actual, not conjectural or hypothetical. Chadwick placed a substantial sum of money beyond the reach of the state court before whom the matrimonial case was pending. If he is released from jail, he would be relieved of the pressure to return this money for equitable

distribution. Mrs. Applegate's injury is unquestionably traceable to Chadwick's refusal to comply with the state court order under which he is being held. Granting Chadwick's habeas petition could enable him to disregard the state court order requiring the return of the funds and significantly reduce Mrs. Applegate's share of the marital estate. Mrs. Applegate's injury may be redressed by the court's requiring Chadwick to remain in prison until he complies with the state court order. These findings of the Court of Appeals in *Chadwick v. Janecka*, 312 F.2d at 601-04, and the history of prior interventions by Mrs. Appelgate in both state and federal court, make clear that she is entitled to intervene and file an answer in these proceedings. *See* Court Order of September 24, 2007.[5]

> 2. Chadwick's contention that it is not possible to comply with a preliminary injunction that has been extinguished by judgment is not a viable basis for granting him habeas relief.

Chadwick is correct that the Magistrate Judge did not address this issue, but Chadwick's factual premise is incorrect; the injunction has not been extinguished as is quite clear from the state court's opinion of March 24, 2006, on equitable distribution. *Chadwick v. Chadwick*, No. 92-19535 (Ct. Com. Pl., Del. Cty., Pa. Mar. 24, 2006).

That order reviews the history of the prior order of July 22, 1994, directing return of the sum

---

[5]After the court granted Mrs. Applegate's motion to intervene by order of September 24, 2007, Chadwick filed a motion to strike Mrs. Applegate's answer in part. Chadwick claimed Mrs. Applegate lacked a warrant of attorney to file the answer on behalf of the District Attorney of Delaware County. Mrs. Applegate correctly responded that the Magistrate Judge's order of September 29, 2006, directed the District Attorney of Delaware County, Pennsylvania, the Solicitor for Delaware County, Pennsylvania, and the Solicitor for the Judiciary of Delaware County, Pennsylvania, "in concert with each other and any other interested parties," to file an answer to Chadwick's petition for writ of habeas corpus. The answer clearly states it is filed by Mrs. Applegate "in conjunction with" the Delaware County Office of the District Attorney (Answer 1), as permitted by the Magistrate Judge's order. Chadwick is incorrect that Mrs. Applegate filed the answer "on behalf of" the District Attorney. Chadwick's motion to strike the answer in part will be denied.

7

of $2,500,000 unilaterally transferred out of the United States by Chadwick. Finding the evidence introduced at trial established beyond all reasonable argument Chadwick's control over the funds subsequent to their transfer, the Delaware County Court had entered an order mandating equitable distribution of the marital estate, including the transferred funds. The order of March 24, 2006, found that prior order final when the Pennsylvania Supreme Court denied Chadwick's Petition for Allowance of Appeal on July 12, 2005.

Notwithstanding Chadwick's contention that the injunction has been terminated, the Delaware County Court refused to open or vacate the Order of Equitable Distribution based on the findings of the Special Master. The court rejected the argument that the Sereni Report was newly discovered evidence that could not have been obtained at the time of trial or that, if introduced at trial, would have had a subsequent impact on the result. Nowhere in that opinion is there any suggestion that under Pennsylvania law there was no longer a valid turnover order or that anything other than compliance would purge Chadwick of contempt.

An *en banc* panel of the Delaware County Court shortly thereafter issued an opinion addressing the weight to be given the report of Special Master Sereni when Chadwick filed an appeal of the denial of the most recent state habeas petitions with the Superior Court. *Chadwick v. Chadwick*, No. 92-19535 (Ct. Com. Pl., Del. Cty., Pa. Mar. 29, 2006). It is clear the final *en banc* decision of the Delaware County Court considers the turnover order still in effect and failure to comply with it remains contemptuous. This court is not free to interpret Pennsylvania law to the contrary. Chadwick is still required to comply with the injunction causing his civil confinement even though the equitable distribution order has been reduced to judgment.

3. The Magistrate Judge did not improperly reject the finding of Master Sereni that Petitioner was unable to comply with the injunction causing his civil confinement and should be released from custody.

On or about July 22, 1994, the Delaware County Court of Common Pleas had entered an order which enjoined Chadwick from assigning, concealing, secreting, or dissipating marital assets, and which, among other provisions, directed him to return the sum of $2,500,000 unilaterally transferred by him out of the United States. Chadwick failed to do so and was adjudged in contempt on November 2, 1994. He has been incarcerated since April 5, 1995.

Following an equitable distribution trial, by order of October 27, 2004, the court found, not only that the funds were clearly a marital asset within the meaning of the Divorce Code, but,

> The evidence introduced at Trial, including the documents demonstrating Appellant's dominion and control over the funds at times subsequent to the transfer, and appellant's acknowledgment of their subsequent return, again established to this Court beyond all reasonable argument that Appellant had control over the funds subsequent to their original transfer. *See Chadwick v. Chadwick*, No. 92-19535 (Ct. Com. Pl., Del. Cty., Pa. Mar. 24, 2006).

Chadwick filed a Petition for Reconsideration and Stay of the Order of October 27, 2004, which was denied. He then filed an appeal of the order but the Superior Court quashed the appeal by order dated January 28, 2005. The Pennsylvania Supreme Court, by Order of July 12, 2005, denied his petition for Allowance of Appeal. *Chadwick v. Chadwick*, No. 92-19535 (Ct. Com. Pl., Del. Cty., Pa. Feb. 22, 2006). That Order accordingly became final.

On October 8, 2004, the court granted a Special Master the following limited authority: "Mr. Sereni's appointment shall grant him the right to investigate, search and obtain any and all information regarding the monies transferred out of the United States by H. Beatty Chadwick, and which is subject to the court order of July 22, 2004."

Master Sereni asserted in his report that Chadwick does not possess or control the secreted assets and accordingly does not have the ability to comply with the July 22, 1994, order and should

be released from his present incarceration.

Chadwick filed a Petition for Special Relief and to Open Judgment in the Delaware County Court of Common Pleas. He argued the Special Master's findings demonstrated a fatal defect and permitted the court to open or vacate its order of equitable distribution. The trial court declined to reopen the judgment.

Chadwick also filed a petition for writ of habeas corpus in the Delaware County Court of Common Pleas based on the Sereni Report. A panel of that court heard presentations and issued an order addressing the weight to be given the Sereni Report after Chadwick took an appeal from denial of his petition. *Chadwick v. Chadwick*, No. 92-19535 (Ct. Com. Pl., Del. Cty., Pa. Feb. 22, 2006). The court made, *inter alia*, the following Findings of Fact:

> 18. . . . Master Sereni's Report and conclusions are based upon the underlying investigations and reports of Parente Randolph and Intelysis.
>
> 19. . . . he was unable to locate or trace any accounts or assets in defendant Chadwick's name . . .
>
> . . . Master Sereni's investigation failed to trace the secreted funds even one step beyond where Plaintiff Applegate's counsel had already been able to trace them.
>
> 21. . . . Master Sereni failed to consider the already-known trail of the early transactions regarding the secreted funds.
>
> 22. . . . in asserting that defendant Chadwick should be released, Master Sereni also completely ignored the multitude of findings by various Judges and Courts over the past eleven (11) years as to Mr. Chadwick's present ability to comply with the Court Order.
>
> 24. . . . there was no provision in the Order granting Master Sereni the authority to do

anything other than attempt to trace and locate the assets secreted by defendant Chadwick.

26. . . . Master Sereni exceeded his authority in making any determinations regarding Chadwick's credibility.

28. . . . Master Sereni's appointment and his ability to trace the secreted funds were contingent on defendant Chadwick's cooperation, which was not provided.

30. . . . Defendant Chadwick refused to sign authorizations enabling Master Sereni to obtain relevant information, notwithstanding the fact that they were consistent with the intent of the court in appointing Master Sereni.

33. . . . Defendant Chadwick also specifically refused to sign narrowly drafted authorizations directing the release of billing information from the multiple attorneys whose services he has retained.

39. . . . Master Sereni failed to seek judicial intervention when faced with defendant Chadwick's refusal to cooperate in the investigation. The court further found that Master Sereni also failed to secure, or even recognize, the importance of securing any authorizations or powers of attorney signed by defendant Chadwick.

40. . . . it was unreasonable in the face of defendant Chadwick's conduct for Intelysis, Parente Randolph and Master Sereni to fail to draw any adverse inference from defendant's lack of cooperation as above described.

41. . . . Master Sereni erred in even pursuing his investigation in the face of defendant Chadwick's blatant lack of cooperation in refusing to sign necessary releases/authorizations and the futility of further inquiry unless and until defendant Chadwick cooperated as he had agreed to do.

58. . . . the deficiencies evident on the face of Intelysis' and Parente Randolph's Reports render them too incomplete and unreliable to form the basis for any conclusions in this case and that said Reports were unreasonably relied upon by Master Sereni. The state court panel then made the following Conclusions of Law:

1. . . . Master Sereni far exceeded the scope of his authority under this court's order of April 8, 2004, in making any findings whatsoever regarding the propriety of defendant Chadwick's continued incarceration, where Master Sereni was appointed for the sole and limited purpose of tracing the funds that defendant transferred out of the United States in February, 1993.

2. . . . Master Sereni further exceeded his authority in making any determinations regarding defendant Chadwick's credibility.

3. . . . Master Sereni clearly exceeded the scope of his role in this case.

8. . . . There were no exceptional circumstances warranting departure from the principle of the law of the case herein in that Master Sereni's Report failed to amount to new evidence.

9. . . . Defendant Chadwick failed to meet his burden of producing evidence sufficient to overcome the established law of this case; that is, defendant failed to demonstrate any change whatsoever in the facts or evidence of the case.

12. . . . Defendant Chadwick's explanation regarding the transfer of the assets subject to the July 22, 1994, order is implausible and not worthy of belief, as determined by the various courts and judges who carefully considered the matter during the eleven years.

13. . . . Defendant Chadwick had at all times material thereto maintained control of the

secreted assets and, therefore, continued to have the ability to comply with the order to return the secreted funds and purge himself of the contempt for which he was incarcerated.

The panel ordered that the Sereni Report be stricken in its entirety, and the petition of H. Beatty Chadwick for writ of habeas corpus be denied. *Id.* at 23.

Because Chadwick has not informed this court of the state court findings of fact regarding the Sereni Report and its final action striking it in its entirety, we do not have the benefit of Chadwick's argument on the binding effect under 28 U.S.C. § 2254 of findings of fact of a Special Master, rejected and stricken by the court appointing him, and by subsequent findings of the *en banc* Court of Common Pleas.

Pennsylvania courts appoint masters, and masters exercise their authority, pursuant to statute or rule. *See In re Sweeney*, 695 A.2d 426, 428 (Pa. Super. 1997). The authority of courts to appoint masters is established by the Judicial Code, 42 Pa. C.S. § 101, *et seq. Id.* Section 323 of the Code grants every court the power necessary to issue orders essential to the exercise of its jurisdiction and to promulgate such rules as the interest of justice and the business of the court may require. 42 Pa. C.S. § 323. "Courts historically possess the inherent authority to appoint masters to assist them in performing their various functions." *Appeal of 322 Boulevard Associates*, 143 Pa.Cmwlth. 618, 600 A.2d 630, 632 (1991). A master's report "is not a final decision, and unless adopted by the trial court, has no effect whatsoever on the parties." *Id.* at 633. "[T]he report of a master is advisory only and must be incorporated into an order of a trial judge to be appealable." *Id.* (trial court erred in tax assessment case by adopting the masters' report, which did not consider the appellant's evidence on the issue of uniformity).

The Pennsylvania Rules of Civil Procedure provide for appointment of a special master in

divorce proceedings.[6] Under Pa. R.C.P. 1920.51, in certain actions of divorce or annulment of marriage, the court, upon its own motion or motion of either party, may appoint a master to consider the claims and issue a report and recommendation. The order of appointment specifies the matters referred to the master. *Id.* After conclusion of a hearing, the master files a report and recommendation and written notice of the right to file exceptions. Pa. R.C.P. 1920.55-2(a). If exceptions are filed, the court hears argument and enters a final decree. Pa. R.C.P. 1920.55-2(c). If no exceptions are filed, the court reviews the report and, if approved, enters a final decree. *Id.*

In an alternative procedure which may be adopted by local rule, after conclusion of a hearing, the master files the report and recommendation and serves notice of the right to demand a hearing *de novo*. Pa. R.C.P. 1920.55-3(b). If a demand is filed, the court holds a hearing *de novo* and enters a final decree. Pa. R.C.P. 1920.55-3(c). If no demand is filed within a twenty-day period, the court reviews the report and recommendation and, if approved, enters a final decree. Pa. R.C.P. 1920.55-3(d).

In proceedings where a special master has been appointed, "[t]he determination of whether an asset is part of the marital estate is a matter within the sound discretion of the trial court." *Tagnani v. Tagnani*, 439 Pa. Super. 596, 654 A.2d 1136, 1138 (1995). "[A] master's report and recommendation are to be given the fullest consideration, especially on the issue of the credibility of witnesses." *Moran v. Moran*, 839 A.2d 1091, 1098 (Pa. Super. 2004). Notwithstanding that a special master observes and hears testimony of witnesses, the trial court is not bound by the master's

---

[6]The Pennsylvania Code also provides for appointment of special masters in orphans' court. The orphans' court divisions of the courts of common pleas may appoint masters to investigate any issue of fact and to report findings of fact, conclusions of law and recommendations to the court. 20 Pa. C.S. § 751(1). The Supreme Court's Orphans' Court Rule 8.7(b) provides: "The report of a master shall not be approved until a decree is entered adopting its recommendations." Upon review, the trial court has the power to accept or reject the master's report and recommendations in whole or in part. *In re Sweeney*, 695 A.2d at 429.

recommendations. *Tagnani*, 654 A.2d at 1138. The master's report is entitled to great weight, but final responsibility for equitable distribution of property lies with the court. *Id.* (affirming trial court's finding that the wife was not suffering from a medical disability, even though it contradicted the special master's finding).

The state court has made factual findings regarding the accuracy of the Sereni Report: (1) Chadwick's lack of cooperation with the investigation invalidated any conclusions or recommendations in the Sereni Report; (2) Chadwick failed to demonstrate any change in the facts or evidence of the case; (3) Chadwick's explanation regarding the transfer of his assets is implausible; and (4) Chadwick has at all material times maintained control of the secreted assets.

Under 28 U.S.C. § 2254(d), a federal court may grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," *id.* § 2254(d)(2). Moreover, a state court's factual findings are "presumed to be correct," and the habeas petitioner carries the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Chadwick has not done so. He relies exclusively on the Sereni Report which has been rejected and stricken for good reason by the state court appointing the Special Master. The Report was stricken by the state court after the Court of Appeals ruled this petition was not successive because of "newly discovered evidence." Since the court appointing the Special Master rejected his Report and ordered it stricken from the record, it is void under Pennsylvania law, of no probative value, and cannot be credited as clearly convincing evidence or any evidence whatsoever. It was not error for the Magistrate Judge to reject the finding of the Special Master that Chadwick was unable to comply with the injunction causing his civil

confinement.

As this court has previously stated, the state court record continues to clearly demonstrate that the state court findings are not erroneous. Even if 28 U.S.C. § 2254(e)(1) did not apply, this court would find that the state court findings are clearly correct and that Chadwick still has the present ability to comply with the July 22, 1994, order if he chooses to do so. The court is not unmindful of the length of his incarceration and finds it hard to understand why one would willingly undergo incarceration rather than comply with a court order that at the time did not comprise all his assets. Chadwick has had the opportunity to establish his inability to comply but has refused to provide the information about his bank accounts and access to those off-shore accounts that would permit an objective trier of fact to reach an informed conclusion as to his actual ability or inability to turn over the funds. It is clear from the well-reasoned state court opinions that nothing other than full compliance or complete candor establishing an inability to comply will purge the petitioner of his contempt.

The petition for writ of habeas corpus will be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| H. BEATTY CHADWICK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GEORGE HILL, Warden, Delaware County | : | FILED |
| Prison, RONALD NARDOLILLO, Warden, | : | |
| Delaware County Prison, THE DISTRICT | : | APR 25 2008 |
| ATTORNEY OF THE COUNTY OF | : | |
| DELAWARE, THE ATTORNEY | : | MICHAEL ___, Clerk |
| OF THE STATE OF PENNSYLVANIA, and | : | By_____ Dep. Clerk |
| BARBARA APPLEGATE | : | NO. 06-1709 |

## ORDER

AND NOW, this 25th day of April, 2008, upon consideration of the petition for writ of habeas corpus, the report and recommendation of the Honorable Arnold C. Rapoport, United States Magistrate Judge, petitioner's objections to the report and recommendation, petitioner's motion to strike answer of intervenor in part, and all other relevant papers in the record, for the reasons set forth in the accompanying memorandum, it is **ORDERED** that:

1. The report and recommendation (paper no. 16) is **APPROVED** and **ADOPTED**.

2. The petition for a writ of habeas corpus (paper no. 1) is **DENIED** and **DISMISSED** without an evidentiary hearing.

3. Petitioner's objections (paper no. 17) are **OVERRULED**.

4. Petitioner's motion to strike answer of intervenor in part (paper no. 21) is **DENIED**.

5. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, there is no basis for issuing a certificate of appealability.

_____
S.J.